**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

DOUGLAS CRAWFORD,               )
                                )
        Plaintiff,              )
                                )
    vs.                         )        Cause No. 3:09-CV-0327
                                )
MARK LEVENHAGEN,                )
Superintendent of the           )
Indiana State Prison,           )
                                )
        Defendant.              )

## OPINION AND ORDER

This matter is before the court *sua sponte* pursuant to 28 U.S.C. section 1915A. For the reasons set forth below, the Court **DENIES** Plaintiff leave to proceed against Defendant and **ORDERS** the clerk to **DISMISS** the complaint **WITH PREJUDICE** pursuant to 28 U.S.C. section 1915A(b)(1).

BACKGROUND

*Pro se* Plaintiff, Douglas Crawford, is a prisoner confined at the Indiana State Prison ("ISP"). Crawford filed a complaint pursuant to 42 U.S.C. section 1983, alleging that Defendant, ISP Superintendent Mark Levenhagen, violated his federally protected rights by taking away his contact visitation privileges. Crawford seeks injunctive relief directing Defendant to reinstate his contact visitation.

DISCUSSION

Pursuant to 28 U.S.C. section 1915A(a), the Court shall review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Court must dismiss an action against a governmental entity or officer or employee of a governmental entity if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(b). Courts apply the same standard under section 1915A as when addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

A document filed *pro se* is to be liberally construed, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). As the Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> . . . only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether

a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quotation marks and citations omitted).

According to the complaint, prison officials charged Crawford with a violation of the Indiana Department of Correction rules. A disciplinary hearing board ("DHB") found Crawford guilty of that charge and sanctioned him with a loss of fifteen days of earned credit time and a two week commissary restriction. (Compl., p. 3.) After the DHB found Crawford guilty, ISP officials, in a separate action, modified his visiting privileges by taking away his contact visitation. (Compl. Ex. A, Modification of Visiting Privileges Form.) Crawford alleges that the subsequent imposition of restrictions on contact visitation "violated the petitioner's 'Due Process' and 'Double Jeopardy Rights' both protected under the United States, and Indiana Constitution[s]." (Compl., p. 3.)

Crawford brings his action under 42 U.S.C. section 1983, which provides a cause of action to redress the violation of federally

secured rights by a person acting under color of state law.  *See*
*Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004).  To
state a claim under section 1983, a plaintiff must allege violation
of rights secured by the Constitution or laws of the United States,
and must show that a person acting under color of state law
committed the alleged deprivation.  *See West v. Atkins*, 487 U.S. 42,
48 (1988).  The first inquiry in every section 1983 case is whether
the plaintiff has been deprived of a right secured by the
Constitution or laws of the United States.  *See Baker v. McCollan*,
443 U.S. 137, 140 (1979).  Thus, Crawford's claim that the
restrictions on his contact visitation violated provisions of the
Indiana constitution, does not state a claim upon which relief can
be granted under section 1983.

Crawford alleges that the imposition of restrictions on his
contact visitation in a second action, following the initial prison
disciplinary proceeding, violated the Fifth Amendment's double
jeopardy clause.  The double jeopardy clause, applicable to the
states by the Fourteenth Amendment, protects against a second
prosecution for the same offense and multiple punishments for the
same offense, but its scope is limited to criminal prosecutions.
*See Breed v. Jones*, 421 U.S. 519, 528-31 (1975).  Prison discipline
does not constitute "prosecution" for double jeopardy purposes,
even if it delays release from incarceration by depriving the
prisoner of good time.  *See Garrity v. Fiedler*, 41 F.3d 1150, 1152
(7th Cir. 1994) ("Changes in the conditions of incarceration, such
as [defendant's] placement in segregation and the extension of his
mandatory release date, do not constitute a second punishment for

the original offense."). Accordingly, being subjected to a disciplinary action, and then being deprived of contact visitation in a subsequent action, does not violate the Constitution's double jeopardy clause.

Crawford also alleges that the restriction on his contact visitation in an administrative action denied him due process of law. The Fourteenth Amendment's due process clause, however, does not protect against every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A convicted prisoner is entitled to due process only when the conditions imposed work an atypical and significant hardship on him in relation to the ordinary incidents of prison life, or where the discipline imposed infringed on rights protected by the due process clause of its own force. *Id*. Even transferring a prisoner from the general population to a segregation unit does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," and is "within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485-86.

Finally, there is no Constitutional right to contact visitation; therefore, restricting an inmate to non-contact visitation states no claim upon which relief can be granted in a section 1983 action. *See Thorne v. Jones*, 765 F.2d 1270, 1273 (5th Cir. 1985) (quotation and citations omitted) (finding prisoners do not retain any absolute rights of physical association, rather, that "visitation privileges are a matter subject to the discretion of

5

prison officials."). Inmates have no independent constitutional right to visitation or to particular forms of visitation, *see Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Smith v. Shettle*, 946 F.2d 1250 (7th Cir. 1991), and prison officials have considerable discretion in determining the time, place, duration, and conditions of visitation. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998). The restriction Levenhagen placed on Crawford's visitation falls within the discretion the Constitution affords to prison officials, the restriction does not work an atypical and significant hardship on him in relation to the ordinary incidents of prison life, and it is "within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. section 1915A(b)(1), the court **DISMISSES** this complaint **WITH PREJUDICE.**

DATED: September 9, 2009            /s/ RUDY LOZANO, Judge
                                    United States District Court